WISECUP, APPELLANT, *v.* GULF DEVELOPMENT, APPELLEE.

(No. 11097—Decided January 31, 1989.)

*Ira H. Thomsen,* for appellant.
*David L. Hall,* for appellee.

FAIN, J. Plaintiff-appellant Gregory Wisecup appeals from the dismissal of his complaint upon statute of limitations grounds. The parties are in agreement as to the applicable statute of limitations, but disagree as to when the limitations period began to run. We agree with Wisecup that until he was injured as a result of the refusal of the Internal Revenue Service to redetermine his federal income tax, his cause of action did not accrue against Gulf Development for fraudulent or negligent overreporting of his earned income. Accordingly, it was error to dismiss his complaint upon statute of limitations grounds, and that dismissal will be reversed.

I

Wisecup was employed as an "outside salesman" for Gulf. In his complaint, Wisecup alleged that he was so employed during the last two months of 1980, and that while so employed he earned commissions in the approximate sum of $500. Wisecup further alleged that he never received any statement for tax purposes of any income earned while employed by Gulf Development, but that in November 1982, Wisecup received notice from the Internal Revenue Service that Gulf Development had reported to the Service that Wisecup had earned $2,610

during calendar year 1980. Wisecup further alleged that in September 1983, he received notice from the Internal Revenue Service that Gulf Development had reported to the Service that Wisecup had earned $843 during calendar year 1981.

Wisecup alleged in his complaint that in October 1984, he received notice from the Internal Revenue Service that the adjustments made to his tax liability for calendar years 1980 and 1981, based upon the additional income reported by Gulf Development, would not be redetermined, and that Wisecup "had no recourse but to pay the additional tax and interest associated with the additional income." Wisecup further alleged that in November 1984, the Internal Revenue Service filed a federal tax lien in Montgomery County, Ohio, with regard to his 1980 and 1981 liability. In his complaint Wisecup alleged, in the alternative, that Gulf Development was "negligent and careless" in misreporting his earned income to the Internal Revenue Service, and that the misreporting was fraudulent.

Gulf Development moved to dismiss Wisecup's complaint based upon the statute of limitations. The trial court granted Gulf Development's motion, and dismissed the complaint. From the dismissal of the complaint, Wisecup appeals.

## II

Wisecup's sole assignment of error is as follows:

"The trial court erred in granting appellee's motion to dismiss appellant's complaint since it is not conclusively shown from the face of the complaint that appellant's action is barred by the statute of limitations."

Both parties agree that the applicable statute of limitations is provided in R.C. 2305.09(D), which provides for a four-year period, from the accrual of the cause of action, within which to bring an action.

The parties disagree, however, as to when Wisecup's cause of action should be deemed to have accrued for statute of limitations purposes.

Gulf Development points to the correspondence that Wisecup received from the Internal Revenue Service alerting him to the fact that Gulf Development had reported the earned income. These communications were received by Wisecup in 1982 and in 1983, and his complaint was filed in 1988, so that if the statute of limitations began to run from the date of each communication, both of the causes of action for the allegedly negligent or fraudulent overreporting of income would be barred by the statute of limitations. Gulf Development argues that Wisecup discovered, or at least should have discovered, the alleged tortious conduct at the time that he received the communications from the Internal Revenue Service.

Wisecup contends, however, that even though he became aware of Gulf Development's tortious conduct, any cause of action that he might have had against Gulf Development did not accrue until such time as he was injured as a result of that tortious conduct, and he was not injured until, at the very earliest, the time that the Internal Revenue Service rejected his attempts to have it redetermine his tax liability.

In that connection, it may be that Wisecup incurred expenditures, for legal services or otherwise, in connection with his efforts to persuade the Internal Revenue Service to redetermine his tax liability for the years in question. If so, those might be deemed to be injuries sufficient to trigger the running of the statute of limitations period. However, since the motion to dismiss was based solely upon the pleadings, we may not assume any facts that are not apparent from the pleadings. Wisecup's complaint does

not allege that he incurred any expenses in connection with his efforts to persuade the Internal Revenue Service to redetermine his tax liability.

This is a "delayed damage" case, similar to the cases cited by Wisecup in his brief. In *Kunz* v. *Buckeye Union Ins. Co.* (1982), 1 Ohio St. 3d 79, 1 OBR 117, 437 N.E. 2d 1194, the action was against an insurance agent for negligent failure to procure the coverage that the insured had intended to obtain. The court held that the plaintiff in that case was not damaged until a loss occurred that would have been within the coverage he intended to obtain, but was not within the coverage that the insurance agent actually obtained. Thus, the court held that the statute of limitations did not begin to run until the loss occurred.

In *Velotta* v. *Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St. 2d 376, 23 O.O. 3d 346, 433 N.E. 2d 147, an action by a vendee against the builder-vendor of a completed residence for failure to construct in a workmanlike manner using ordinary care was held not to have accrued until such time as the failure to build the structure in a workmanlike manner actually resulted in the plaintiff's experiencing serious water drainage problems because, giving the plaintiff the benefit of every reasonable inference, he was not damaged until the defective workmanship resulted in serious water drainage problems. In *Velotta*, as in the case before us, the plaintiff asserted both negligence and fraud causes of action. In connection with the fraud cause of action, the court held as follows:

"The Court of Appeals similarly erred in affirming the dismissal of appellant's allegations of fraud. It is well established a cause of action for fraud accrues when the fraud is discovered. R.C. 2305.09. Appellant's complaint can fairly be read to allege discovery of appellee's fraud 'sometime in 1975,' conceivably within the four-year limitations period applicable to fraud actions. Dismissal would be proper where upon the face of the complaint it appears with certainty the fraud was discovered more than four years before filing suit. *Peterson* v. *Teodosio* (1973), 34 Ohio St. 2d 161. Dismissal of this fraud claim however, was erroneously granted because the bar of the statute of limitations was not demonstrated on the face of the complaint. [Footnote omitted.]" *Id.* at 379-380, 23 O.O. 3d at 348, 433 N.E. 2d at 151.

From the above-quoted language, one might be tempted to conclude that for fraud causes of action, the date of the discovery of the fraud supplants the date that the fraud is complete, *i.e.*, the first date upon which the plaintiff is damaged as a result of the fraud, as the commencement date for statute of limitations purposes. A panel of this court, sitting by assignment in the Third District, held similarly in *Omni-Food & Fashion, Inc.* v. *Smith* (May 13, 1987), Allen App. No. 1-85-44, unreported, that the date of discovery of professional malpractice had supplanted the date of termination of the professional relationship as the commencement date for statute of limitations purposes, as a result of *Oliver* v. *Kaiser Community Health Foundation* (1983), 5 Ohio St. 3d 111, 5 OBR 247, 449 N.E. 2d 438; and *Skidmore & Hall* v. *Rottman* (1983), 5 Ohio St. 3d 210, 5 OBR 453, 450 N.E. 2d 684. However, this reasoning was revealed to be flawed in *Omni-Food & Fashion, Inc.* v. *Smith* (1988), 38 Ohio St. 3d 385, 528 N.E. 2d 941; and *Frysinger* v. *Leech* (1987), 32 Ohio St. 3d 38, 512 N.E. 2d 337, in which the Supreme Court held that the date of discovery of professional malpractice merely supplements the date of termination of the professional relationship for statute of limita-

tions purposes, and that the later of those two dates triggers the commencement of the statute of limitations period.

In our view, *Frysinger* v. *Leech, supra,* provides support for the notion that the date of discovery of tortious conduct is intended to supplement, rather than to supplant, the date of accrual of the cause of action.

In holding that, in a situation in which the termination of the professional relationship occurred after the discovery of the professional malpractice, the statute of limitations does not begin to run until the date of termination of the professional relationship, the court made the following observation:

"* * * [T]he termination rule encourages the parties to resolve their dispute without litigation, and stimulates the physician to mitigate the patient's damages. Those worthwhile goals still justify the termination rule, so long as it does not curtail the patient's right to sue after discovering the malpractice injury." *Frysinger* v. *Leech, supra,* at 41, 512 N.E. 2d at 341.

Similarly, in the case before us, a holding that the statute of limitations did not begin to run until Wisecup was actually injured as a result of the allegedly tortious conduct will encourage others similarly situated to try to solve their problems before any injury has actually been sustained, thereby avoiding the necessity for litigation.

This court has often stated its preference for deciding causes of action upon their merits. We find support for this preference in Section 16, Article I of the Ohio Constitution, which provides as follows:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

Statutes of limitations are important and necessary limitations upon this right. They are necessary to provide for the eventual repose of all disputes, both actual and potential. However, since they are limitations upon the rights of the citizens of Ohio for redress, cases in which the application of a statute of limitations is doubtful should be resolved in favor of permitting the case to be decided upon its merits. This principle provides further support for our holding that in cases involving delayed damage, even cases sounding in fraud, the statute of limitations does not begin to run until the plaintiff has been injured as a result of the tortious conduct alleged. In the case before us, it cannot be determined from the complaint that any actual injury occurred until, at the earliest, the date upon which the Internal Revenue Service informed Wisecup that it would not redetermine his tax liability for the years in question.

Wisecup's sole assignment of error is sustained.

### III

Wisecup's sole assignment of error having been sustained, the judgment of the trial court dismissing the complaint will be reversed, and this cause will be remanded for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

BROGAN and WILSON, JJ., concur.